## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID A. HELSEL, | ) | |
| | ) | Civil Action No. 16 – 10J |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| NANCY GIROUX, ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, and DISTRICT | ) | |
| ATTORNEY RICHARD A. | ) | |
| CONSIGLIO, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner

David A. Helsel ("Petitioner") pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 3.) He is challenging his

October 4, 2012 judgment of sentence of 75 to 150 years of incarceration after he was convicted

by a jury of thirty-seven (37) counts of various crimes, including unlawful restraint, attempted

rape by forcible compulsion, attempted rape of a child, simple assault, recklessly endangering

another person, terroristic threats, corruption of minors, indecent exposure, possessing an

instrument of crime, possession of a weapon and harassment. Com. v. Helsel, CP-07-CR-

0001679-2009 (Blair Cty. Common Pleas Ct.).[1]

### A.    Factual and Procedural History

The following factual and procedural history of the case was set forth by the

Pennsylvania Superior Court in its Memorandum dated September 14, 2012.

---

[1] The docket sheet for Petitioner's criminal case can be found online at
https://ujsportal.pacourts.us.  It is also found in the record at ECF No. 18.

. . . On June 19, 2009, Helsel came upon several juveniles in a cemetery in Altoona. Posing as a cemetery employee, he informed them that there had been reports that they were knocking over headstones. The teems denied committing any acts of vandalism. After a brief physical altercation with one of the males, Helsel separated the two females from the group – M.B., age 12, and L.G., age 15 – by telling them they had to come with him to the owner's house. He led them, holding them by the wrists for part of the way. The girls stated they did not run when Helsel released his grip because they were afraid. Upon reaching a wooded area, Helsel drew a knife and informed the girls he wanted to touch them all over their bodies. Fearing he would hurt them, the victims negotiated with Helsel, eventually agreeing that he could rub his penis against each of their backsides, and then they would be free to go. He engaged in this behavior with L.G. and then with M.B. Helsel told M.B. he wanted to have sex with her, and the victims tried to run away. At that, Helsel grabbed M.B. by the hair and pulled her further into the woods. While in the woods, Helsel attempted to take off M.B.'s shorts and to spread her legs, while M.B. fought to stop him.

L.G. ran to a nearby building that happened to be hosting a meeting of the Fraternal Order of Police. She informed police what had happened, and Patrolman Shaun McCready and Patrolman (now Corporal) Michael Sapienza went in search of M.B. and Helsel. Patrolman McCready heard a girl screaming, and upon reaching a cut-in that led into the woods, he saw M.B. sitting with her back facing him and Helsel standing directly in front of her. He drew his weapon and told Helsel to get on the ground, at which Helsel fled. As the police ran after him, M.B. shouted that Helsel raped her. According to Corporal Sapienza, who came to the clearing immediately after Patrolman McCready, M.B. was naked from the waist down.

Multiple officers responded to assist in the search for Helsel. Corporal Sapienza apprehended him near the wood line at 15th Street and Bell Avenue; Helsel was found hiding under a pile of leaves, dirt and branches. A search incident to arrest revealed a knife in Helsel's pocket.

At the police station, the police gave Helsel his Miranda warnings, which Helsel waived and provided a statement wherein he reportedly admitted, in a recorded statement, that he attempted to have sex with M.B. in the woods. Fingernail scrapings were taken from M.B. that matched Helsel's DNA profile.

Helsel was charged with 37 counts of various crimes. A three-day jury trial ensued, and Helsel testified in his own defense. He denied all of the allegations against him, instead stating that he happened upon the group of teens hanging out in the cemetery and joined them. He indicated that there was discussion about purchasing marijuana by the group, and that he accompanied M.B. and L.G. to make the purchase. He became separated from the girls, and upon hearing police sirens, he walked over to see what was going on, at which point he was arrested.

According to Helsel, the police struck him several times and intimidated him, which caused him to provide the aforementioned admission.

On January 20, 2011, the jury convicted Helsel of unlawful restraint, attempted rape by forcible compulsion, attempted rape of a child, three counts of simple assault, two counts of recklessly endangering another person, two counts of terroristic threats, two counts of corruption of minors, and one count each of indecent exposure, possessing an instrument of crime, possession of a weapon, and harassment. On February 8, 2011, the Commonwealth provided notice of its intention to seeks a mandatory sentence under 42 Pa. C.S.A. § 9718.2(a)(2), which calls for a sentence of life imprisonment for any person convicted of an offense that requires registration as a sexual offender who had "previously been convicted of two or more offenses arising from separate criminal transactions" that require the individual to register as a sexual offender. 42 Pa. C.S.A. § 9718.2(a)(2). This request was based upon Helsel's two prior convictions of rape and his current convictions of attempted rape of a child and attempted rape by forcible compulsion, all of which require Helsel to register as a sexual offender pursuant to Section 9795.1.

The sentencing hearing was held on May 6, 2011. The Commonwealth argued that Helsel's conviction of attempted rape was his third strike as a sexual offender, mandating a sentence of life in prison. Helsel argued that this conviction should be treated as his second strike pursuant to our Supreme Court's holding in Commonwealth v. Shiffler, 583 Pa. 478, 879 A.2d 185 (2005), because he pled guilty to both prior rapes at a single hearing and the sentences for the crimes ran concurrently, and thus he had only one opportunity to reform, not two. The trial court found the language of Section 9718.2(a)(2) to be unambiguous in that it required Helsel's current conviction of attempted rape to be treated as his third strike.

* * *

Although this is [Helsel's] third conviction of a crime that requires him to register as a sexual offender resulting from three separate criminal transactions, because he served a single prison term for the first two convictions, he only had one opportunity to reform, not two. Based upon our Supreme Court's holding in Shiffler, Helsel should have been sentenced as a second-strike offender under Section 9718.2(a)(1). Therefore, the trial court erred by sentencing him as a third-strike offender under section 9718.2(a)(2).

Com. v. Helsel, 53 A.3d 906, 908-10, 917 (Pa. Super. Sept. 14, 2012) (Helsel I).[2]

---

[2] This Memorandum is attached to Respondents' Answer as Exhibit D and found in the record at ECF No. 16-14.

As a result of the Superior Court vacating Petitioner's life sentence, Petitioner was resentenced on October 4, 2012 to 75 to 150 years of incarceration. *See* (ECF Nos. 16-15, 16.) Petitioner again appealed to the Superior Court, who issued a Memorandum affirming his judgment of sentence on September 16, 2013. Com. v. Helsel, 2013 WL 11253727 (Pa. Super. Sept. 16, 2013) (Helsel II); *see also* (ECF No. 16-22.) Petitioner then filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was denied on March 12, 2014. Com. v. Helsel, 87 A.3d 318 (Pa. Mar. 12, 2014); *see also* (ECF No. 16-23.)

Petitioner filed a Petition under Pennsylvania's Post Conviction Relief Act ("PCRA") on May 7, 2015. (ECF No. 16-24.) Counsel was appointed on May 14, 2015, and, on November 24, 2015, Petitioner requested that his PCRA Petition be withdrawn, which was granted that same day during his scheduled PCRA hearing. (ECF No. 16-25.) He filed the instant Petition for Writ of Habeas Corpus on January 12, 2016. (ECF Nos. 1, 3.)

## B.     **Applicable Standards**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court of the United States, in Williams v. Taylor, 529 U.S. 362 (2000), discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 1498.  The Third Circuit Court of Appeals, consistent with the Williams v. Taylor

interpretation, set forth in Matteo v. Superintendent, SCI-Albion, 171 F.3d 877 (3d Cir. 1999),

*cert*. *denied* 528 U.S. 824 (1999), a two-tier approach to reviewing § 2254(d)(1) issues:

> First, the federal habeas court must determine whether the state court decision
> was "contrary to" Supreme Court precedent that governs the petitioner's claim.
> Relief is appropriate only if the petitioner shows that "Supreme Court precedent
> requires an outcome contrary to that reached by the relevant state court." O'Brien
> [v. Dubois], 145 F.3d [16], 24-25 [1st Cir. 1998)].  In the absence of such a
> showing, the federal habeas court must ask whether the state court decision
> represents an "unreasonable application" of Supreme Court precedent; that is,
> whether the state court decision, evaluated objectively and on the merits, resulted
> in an outcome that cannot reasonably be justified.  If so, then the petition should
> be granted.

Id. at 891.  The phrase "clearly established Federal law," as the term is used in Section

2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme

Court] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 365.

Under the "unreasonable application" clause,

> a federal habeas court may not grant relief simply because that court concludes in
> its independent judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly.  Rather, that application must
> also be unreasonable.

Id.  If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision

is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo*

evaluation of the constitutional claim on the merits.  *See* Tucker v. Superintendent Graterford

SCI, 677 F. App'x 768, 776 (3d Cir. 2017) (citing Panetti v. Quarterman, 551 U.S. 930, 953

(2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must

then resolve the claim without the deference AEDPA otherwise requires.").  Indeed, the Third

Circuit recently explained that,

[w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient. That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," Williams, 529 U.S. at 389, 120 S.Ct. 1495. *See also* Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred. *See* Lafler v. Cooper, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under § 2254(d)(2), a state court decision is based on an "unreasonable determination of the facts" if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding," which requires review of whether there was sufficient evidence to support the state court's factual findings. *See* Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Within this overarching standard, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, § 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).

6

**C.**     **Discussion**

Petitioner raises the following three grounds for relief in his Petition: (1) illegal sentence;

(2) unconstitutional sentence; and (3) trial court error in failing to grant demurrer as to the charge

of attempted rape of a child.  (ECF No. 3.)

**1.  Illegal sentence**

In ground one, Petitioner claims that his sentence is illegal.  In support of his claim, he

argues that the trial court imposed two consecutive 25 to 50 year sentences for attempted rape of

a child and attempted rape by forcible compulsion, which are two subsections of the rape statute,

and that this was illegal because there was only one victim and one criminal event.  According to

Petitioner, this amounted to him being sentenced as a "three strike offender" instead of a "two

strike offender" which was contrary to the Pennsylvania Superior Court's opinion and order

dated September 14, 2012.

> Petitioner presented this issue on direct appeal and it was addressed as follows:
>
>       Like sexual assault and statutory sexual assault, rape by forcible
> compulsion and rape of a child each includes an additional element not included
> in the other.  Rape by forcible compulsion requires the use or threat of force, but
> has no age restriction.  Rape of a child does not require forcible compulsion, but
> only that the complainant be under the age of thirteen.  Because rape by forcible
> compulsion and rape of a child contain different elements, we reject Helsel's
> argument that a defendant cannot be found guilty of, and sentenced for, both
> offenses.

(ECF No. 16-22, pp.11-12.)

The Superior Court also disagreed with Petitioner's argument that rape of a child and

rape by forcible compulsion cannot be two separate crimes because they are subsections of the

same statute.  Citing to the specific language of the statute, 18 Pa. C.S. § 3121(a)&(c), the court

stated that "Section 3121 refers to rape by forcible compulsion and rape of a child as separate

*offenses*. Based on the language of the statute, they are separate crimes, and do not merge for sentencing purposes. *See* 18 Pa. C.S. § 105 ('The provisions of the [Crimes Code] shall be construed according to the fair import of their terms, but when the language is susceptible of different constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved')." (ECF No. 16-22, p.12) (alteration in original).

Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus. *See* Wooten v. Bomar, 361 U.S. 888 (1959). Unless a habeas petitioner establishes that a state sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality of a sentence is purely a question of state law that a federal court has no power to review in a habeas corpus proceeding. *See* Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984); U.S. ex rel. Jackson v. Myers, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (the severity of a defendant's sentence alone does not constitute grounds for federal habeas relief); Knight v. Beyer, 1989 WL 68618, at *6 (E.D. Pa. June 22, 1989) ("[a]bsent some constitutional violation, it is clear that, particularly in the area of state sentencing guidelines, federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure"). Thus, a state court's sentencing decision and claims arising out of that decision are generally not constitutionally cognizable. Such is the case here where Petitioner presents a question of state law as to whether he was properly sentenced under Pennsylvania law. It is not a claim that is cognizable on federal habeas review; therefore, it will be denied.

2. **Unconstitutional sentence**

In ground two, Petitioner claims that his sentence is unconstitutional because it is "unseverable." In support he states that he is "not sure on how to explain" and cites to <u>Alleyne v. United States</u>, 570 U.S. 99 (2013). In <u>Alleyne</u>, the United States Supreme Court held that facts that increase mandatory minimum sentences must be submitted to the fact-finder and determined beyond a reasonable doubt. <u>Id</u>. at 103.

The premise of Petitioner's claim is unclear, but it appears he may be relying on a Pennsylvania Supreme Court case that found 42 Pa. C.S. § 9718 unconstitutional because it violated the Supreme Court's rule announced in <u>Alleyne</u>. Specifically, in <u>Com. v. Wolfe</u>, 140 A.3d 651, 663 (Pa. 2016) the Pennsylvania Supreme Court held that 42 Pa. C.S. § 9718 "is irremediably unconstitutional on its face, non-severable, and void." However, Petitioner's argument, to the extent he relies on <u>Wolfe</u>, is misplaced because that case did not involve the imposition of a mandatory minimum sentence based on a prior conviction and did not apply to 42 Pa. C.S. § 9718.2, the sentencing provision under which Petitioner was sentenced to two 25-year minimum sentences for attempted rape of a child and attempted rape by forcible compulsion. *See* (ECF No. 16-15.) In fact, the Pennsylvania Supreme Court recently clarified <u>Alleyne</u>'s application to mandatory sentences based on previous convictions in <u>Com. v. Resto</u>, 179 A.3d 18 (Pa. 2018), when it said, "[A] conviction returned by a jury to which a mandatory minimum sentence directly attaches is not the same as an aggravating fact that increases a mandatory minimum sentence. . . . [S]uch a conviction is itself a contemporaneous jury determination, and the concern of <u>Alleyne</u> is with sentencing enhancements tied to facts to be determined by a judge at sentencing." <u>Id</u>. at 21. Furthermore, this Court notes that under prevailing federal jurisprudence, prior convictions are not treated as a type of fact implicating <u>Alleyne</u>. *See* <u>Com. v. Bragg</u>, 133 A.3d 328, 332-33 (Pa. Super. 2016) (citing <u>Almendarez-Torres</u>

9

v. United States, 523 U.S. 224 (1998)), *aff'd* 169 A.3d 1024 (2017) (per curiam). For these reasons, Petitioner is not entitled to habeas relief on this ground.

### 3. **Trial court error**

Petitioner's final ground for relief is that the trial court erred in not granting his demurrer to the charge of attempted rape of a child. In support, he argues that there was a lack of sufficient evidence presented at trial by the Commonwealth as to whether he knew his victim was under the age of 13.

Petitioner presented this issue on appeal, but it was treated as a review of the sufficiency of the evidence to convict Petitioner of attempted rape of a child because, as noted by the Superior Court, Petitioner had waived the issue of trial court error by presenting evidence after the court's denial of the demurrer. (ECF No. 16-14, p.22.) After reviewing a similar case that Petitioner had attempted to differentiate on appeal, the Superior Court found that both cases involved specific intent crimes and that the Commonwealth need not prove every element of the crime for a person to be guilty of attempt, "only that the defendant took a substantial step towards committing the crime." (ECF No. 16-14, p.26) (citing 18 Pa. C.S.A. § 901). "[A] defendant's belief as to the age of his victim is irrelevant for any inchoate crime involving the crime of rape of a child." Id. (citing 18 Pa. C.S.A. § 3102).

Although Petitioner presented this claim to the Superior Court on direct appeal in terms of trial court error, the Superior Court recognized that such trial error claim was waived and instead reviewed it in terms of sufficiency of the evidence. Petitioner also presents this claim to this Court in terms of trial court error, but such a claim is procedurally defaulted because the state court declined to review the claim as one of trial court error after finding that it had been waived. *See*, *e.g.*, Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501

U.S. 722, 732 (1991). The Superior Court's finding that the trial court error claim was waived was both independent and adequate because it was based on the application of a state procedural rule that was firmly established and regularly followed. *See*, Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Ford v. Georgia, 498 U.S. 411, 423-24 (1991). *See also* Shotts v. Wetzel, 724 F.3d 364, 370 (3d Cir. 2013).

Nevertheless, as a sufficiency of the evidence claim, which is how the claim was addressed on direct appeal, the United States Supreme Court has stated that the limited inquiry in reviewing such claims in a federal habeas corpus proceeding is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The federal court will not reweigh the evidence. Id. The trier of fact is responsible for fairly resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. Id. In other words, the federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. Id. at 326.

The law in Pennsylvania with respect to the crime of attempted rape of a child is as follows. A person is guilty of rape of a child in Pennsylvania "when the person engaged in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa. C.S.A. § 3121(c). Additionally, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S.A. § 901(a). As noted by the Superior Court, while attempt is a specific intent crime the Commonwealth did not have to prove all the elements of rape of a child, only that Petitioner took a substantial step towards committing the crime of rape of a child. In other words, the

11

Commonwealth had to prove beyond a reasonable doubt that Petitioner intended to commit the crime of rape of a child and that he took a substantial step towards committing it but ultimately failed to do so. Also, in Pennsylvania, a defendant's belief or lack of knowledge as to the age of the victim is irrelevant for the crime of rape of a child. *See* 18 Pa. C.S.A. § 3102 ("[W]henever in this chapter the criminality of conduct depends on a child being below the age of 14 years, it is no defense that the defendant did not know the age of the child or reasonably believed the child to be the age of 14 years or older."). A review of the evidence presented at trial reveals that a rational trier of fact could easily have found beyond a reasonable doubt that Petitioner was guilty of attempted rape of a child. Therefore, to the extent that this claim is not procedurally defaulted and is reviewed in terms of sufficiency of the evidence, it is denied.

**D.    Certificate of Appealability**

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). A certificate of appealability should be denied in this case because jurists of reason would not disagree with the Court's resolution of Petitioner's claims or conclude that they are "adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). A separate Order will issue.

Dated:  March 20, 2019.

_____

Lisa Pupo Lenihan
United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID A. HELSEL, | ) | |
| | ) | Civil Action No. 16 – 10J |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| NANCY GIROUX, ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, and DISTRICT | ) | |
| ATTORNEY RICHARD A. | ) | |
| CONSIGLIO, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

**AND NOW**, this 20th day of March, 2019;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 3) is

denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of

Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules

of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by

Rule 3 of the Federal Rules of Appellate Procedure.

_____

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    David A. Helsel
        KA-7599
        SCI Huntingdon
        1100 Pike Street
        Huntingdon, PA  16654-1112

        Counsel of record
        (Via CM/ECF electronic mail)